CRAIN v GIBSON

1. COUNTIES—COUNTY COMMISSIONERS—APPOINTMENT—SALARY—LIA-
   BILITY FOR SALARY—RECOVERY—STATUTES.
   Acceptance of an appointment by a county commissioner to
   administer a Federal Emergency Employment Program is not
   prohibited where there is no salary to be paid for such services,
   but where compensation is paid in violation of statute, both the
   person making the appointment and the person appointed or
   employed are liable for all moneys paid in connection there-
   with and recovery may be maintained by any taxpayer of such
   county (MCLA 46.30a; MSA 5.353[1]).

2. CONSTITUTIONAL LAW—COUNTIES—GOVERNMENTAL POWERS—LO-
   CAL POWERS—LIMITED POWERS—IMPLIED POWERS.
   The constitution vests all county governmental power in the
   tripartite executive, legislative and judicial divisions of govern-
   ment; local governments have no general or inherent powers,
   their limited powers are only those expressly conferred upon
   them by the constitution, by acts of the Legislature, or neces-
   sarily implied therefrom.

3. COUNTIES—BOARD OF COMMISSIONERS—POWERS—LIMITED POWERS
   —RESOLUTIONS AND MINUTES.
   The limited powers of a county board of commissioners are
   legislative and administrative and not executive in the sense of

REFERENCES FOR POINTS IN HEADNOTES

[1, 7–9, 12] 56 Am Jur 2d, Municipal Corporations, Counties, and
Other Political Subdivisions §§ 258, 259, 269.
  63 Am Jur 2d, Public Officers and Employees §§ 411–413, 512.
  Right of de facto officer to salary or other compensation annexes to
office. 151 ALR 952.

[2–4, 10] 16 Am Jur 2d, Constitutional Law §§ 210–215, 250, 251.
  56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
cal Subdivisions §§ 193–195.
  Permissible limits of delegation of legislative power. 79 L Ed 474.

[3, 4, 7, 9–12] 56 Am Jur 2d, Municipal Corporations, Counties, and
Other Political Subdivisions § 189 *et seq.*

[5, 6] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 256.

[8] 63 Am Jur 2d, Public Officers and Employees § 22.

the executive department in the tripartite division of state government; neither the board collectively, nor the chairman thereof, are chief executives of the county and the few powers the board does have are to be exercised as a board, through its official resolutions and proceedings as recorded in its official minutes, and not individually.

4. COUNTIES—BOARD OF COMMISSIONERS—POWERS—DUTIES—BOARD CHAIRMAN—FUNCTIONS.

The powers of a county board of commissioners, apart from some specific duties relating to maintenance and repair of buildings and bridges, borrowing procedures, jails and the like, in all cases where no other provisions are made is to represent the county and to have the care and management of the property and business of the county.

5. COMMON LAW—DOCTRINE OF INCOMPATIBILITY—CONFLICT OF INTERESTS.

The common law has developed the doctrine of incompatibility to preclude one person from holding two public offices the duties of which could be incompatible and give rise to possible conflicts of governmental, as distinguished from personal or private, interests.

6. COUNTIES—BOARD OF COMMISSIONERS—COMPATIBILITY—STATUTORY PROHIBITION—STATUTES.

A statute prohibits a county board of commissioners from appointing or electing one of its members to any other county office or position, whether compatible with the office of commissioner or not (MCLA 46.30; MSA 5.353).

7. COUNTIES—BOARD OF COMMISSIONERS—DUTIES—COUNTY PROGRAMS—SANCTION—COMPENSATION—STATUTES.

A county board of commissioners, or a committee thereof, may ask an individual member or members to perform certain tasks such as investigating and reporting upon particular programs or situations, and such individual conduct on the part of the commissioners is not only impliedly necessary for the functioning of county boards, but is expressly sanctioned and compensation is authorized therefore by statute (MCLA 46.30[1][c]; MSA 5.353[1][c]).

8. COUNTIES—BOARD OF COMMISSIONERS—BOARD CHAIRMAN—EXTRA DUTIES—COMPENSATION.

The chairman of a county board of commissioners is an ex-officio member of several committees and the limitation of days of

compensation applicable to all other members of the board is not applicable to the chairman when he is performing extra duties assigned to him by the board for committee work or other assignments.

9. COUNTIES—BOARD OF COMMISSIONERS—COUNTY COMMISSIONER—BUSINESS OF THE BOARD—PROHIBITED ACTIONS—LAWFUL COMPENSATION—STATUTES.

The question, where a county commissioner accepts an appointment to administer a Federal Emergency Employment Program, is one of determining what matters involve the lawful compensation of an individual commissioner who is carrying out legitimate business of the board under authority of the board, and what matters instead fall within the prohibited appointments or employment proscribed (MCLA 46.30a; MSA 5.353[1]).

10. COUNTIES—BOARD OF COMMISSIONERS—POWERS—DUTIES—BUSINESS OF COUNTY—BUSINESS OF BOARD.

A county board of commissioners has only such administrative powers as are necessary to accomplish its own organizational housekeeping and to enable it to attend to the details of performing its other duties; for example, it is the business of the county to have public buildings maintained and repaired and it is the business of the county board to see that the necessary work is done; it is not the duty of the board or of any individual member thereof to do the work personally.

11. COUNTIES—BOARD OF COMMISSIONERS—PARTICIPATION IN FEDERAL PROGRAMS—BOARD RESPONSIBILITY—BOARD FUNCTIONS—COMPENSATION—STATUTES.

County participation in a Federal Emergency Employment Program requires that the board of commissioners comply with Federal acts and regulations, but the day-by-day work involved is not the personal responsibility of the board; the activity of a commissioner as a coordinator or liaison officer is not a board function and compensation is expressly prohibited by statute (MCLA 46.30a; MSA 5.353[1]).

12. COUNTIES—BOARD OF COMMISSIONERS—COUNTY COMMISSIONER—FUNCTIONS—DUTIES—COMPENSATION—REMAND TO TRIAL COURT.

Some of the functions and duties of an appointed county commissioner in administering a Federal Emergency Employment Program are compensable, while other actions in connection therewith are not; therefore, where the proceedings in the trial court in a suit challenging the propriety of compensation to a

commissioner did not involve a determination whether certain of the compensation received would be appropriate under the statutes, a remand to the trial court is necessary for such a determination.

Appeal from Wexford, William R. Peterson, J. Submitted June 3, 1976, at Grand Rapids. (Docket No. 25986.) Decided January 5, 1977. Leave to appeal applied for.

Complaint in district court by Audrey Crain, a taxpayer of the county, against James D. Gibson, Commissioner of Wexford County, for recovery and payment to the county of compensation paid to defendant by the county for administering a Federal government program. Summary judgment for plaintiff. Defendant appealed to circuit court. Affirmed. Defendant appeals by leave granted. Affirmed, but remanded for the limited purpose of determining if any portion of the payments to the defendant qualify as compensable.

*Joseph G. Harris, Jr.,* Prosecuting Attorney of Wexford County, for plaintiff.

*Donley, Walz, Fershee & Jordan, P. C.,* for defendant.

Before: DANHOF, C. J., and D. E. HOLBROOK and D. L. MUNRO,* JJ.

D. L. MUNRO, J. This appeal is taken from a decision by the Wexford County Circuit Court affirming in part the decision of the 84th Judicial District Court granting plaintiff-appellee's motion for summary judgment. There was no testimonial record in the case and the matter was submitted to both the district court and the circuit court upon the admissions made in the pleadings, the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

records of the Wexford County Board of Commissioners, reports filed with said county and a limited stipulation of facts. Based on those records and stipulations the defendant Chairman of the Wexford County Board of Commissioners entered into the performance of services as the administrator of the Federal Emergency Employment Programs in Wexford County and was paid the sum of $9,420 in per diem pay from September 1971 to the date of commencement of the suit on August 15, 1974.

At all times pertinent to the issues here involved defendant was Chairman of the Wexford County Board of Commissioners. The authority for defendant's conduct and compensation is found in two acts of the board relating to the Emergency Employment Program as follows:

September 13, 1971: "Chairman Gibson reported on the Emergency Employment Program. Motion by Comm. Segerlund that Chairman Gibson be paid on a per diem basis while working on the Emergency Employment Program. Motion by Comm. Baker to amend the preceding motion to include this Board of Commissioners' acceptance of the Emergency Employment Program. Supported by Babcock. Original motion as amended supported by Comm. Blick. On call of roll, motion as amended carried unanimously. Absent McNitt and White."

January 8, 1973: "The Clerk advised the Board that no funds had been budgeted for the EEA coordinator's position for 1973 and would require approximately $5000 for the year. If the program does not last all year, the surplus funds will be reverted to the county general fund. Motion by Comm. Clark. Seconded by Comm. Loughrin to budget $5000 to the EEA cordinator (sic) account for 1973. Roll call approved unanimously."

The pay vouchers establishing the payment of the sum of $9,420 to the defendant were computed on a per diem basis and designated the defendant as "EEA Co-ordinator" or "EEA Liaison Officer." It was stipulated that the duties of the defendant consisted of preparation of reports on the program monthly or as requested by the Office of Manpower Planning, the Department of Labor, and the State of Michigan, consisting mainly of receiving and analyzing payroll data and employment reports from the various employment units and departments of the county such as the County Road Commission, County Sheriff's Department, etc. In addition, defendant responded to changes in program format and funding allowances by the state agency, prepared the original grant application and subsequent applications including the narrator report of the planning program and notified local employing units changing program requirements. Additionally, as found by the trial judge, defendant's duties involved the publicizing of the program to the various county departments, an evaluation of the requested or stated needs of the various departments, publicizing the program to the unemployed for whom the program was devised, the taking of applications for employment, reviewing same, consulting with department heads as to who was to be employed, furnishing the data to the payroll people, informing the persons they were hired, procuring reports on employees from the department heads and handling communications of all kinds to the state and Federal sources of funding, the department heads and employees as well as the County Board of Commissioners. No one else was employed in administering the program.

It is the plaintiff's claim that defendant violated

1937 PA 199; MCLA 46.30a; MSA 5.353(1), providing as follows:

"No member of the board of supervisors of any county shall be eligible to receive, or shall receive, any appointment from, or be employed in any capacity whatsoever, by any officer, board, committee or other authority of such county. In case of any appointment or employment made in violation of the provisions of this act, both the person making such appointment or employment, and the person so appointed or employed, *shall be liable for all moneys paid to such person as salary, wages, or compensation in connection therewith.* In case such appointment or employment is made by a committee or board, any member thereof at the time such appointment was made or contract of employment entered into shall be liable therefor *and an action for the recovery of any salary, wages, or compensation paid in connection with any appointment or employment made in contravention of the provisions of this act, may be maintained by any taxpayer of such county.* All moneys recovered in any such action shall be deposited in the county treasury to the credit of the general fund. The prosecuting attorney of such county shall, upon the request of any such taxpayer, prosecute such action in his behalf. Any member of the board of supervisors accepting such appointment or employment in violation of provisions of this act shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $100.00 or by imprisonment in the county jail for a period of not more than 90 days, or by both such fine and imprisonment, in the discretion of the court. Any officer or other official, or any member of a board or committee making any appointment or employment in violation of the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be subject to such punishment as is hereinabove described: Provided, however, That no member of the board of supervisors of any county shall be employed in any capacity whatsoever by the county road commission; nor the state highway department: Provided further, That nothing in this act

contained shall be construed to limit or prohibit the right of any member of the board of supervisors of any county from becoming a candidate for any elective office at any general or special election; *or from accepting from the board of supervisors any office or appointment wherein there is no salary to be paid for services therefor:* Provided, however, That members of the board of supervisors may act on boards of determination or as special commissioners in connection with all drainage matters calling for such boards of determination." (Emphasis added to high-light the alleged conflicting provisions of the statute.)

The issue here involved is whether or not the foregoing statute prohibits the Chairman of the Board of Commissioners from performing the services hereinbefore delineated where he is paid a per diem for each day so involved.

The defendant contends that there is no prohibition on the acceptance of such appointment "wherein there is no salary to be paid for services". However, as above noted the statute further provides for liability "for all moneys paid to such person as a salary, wages or compensation", and provides for "the recovery of any salary, wages or compensation paid". It appears, therefore, that the clear intent of the section taken as a whole is to prohibit compensated appointments without regard to the measure of such compensation.

The defendant further contends that there was no appointment or employment because he was simply performing his duties as Chairman of the County Board of Commissioners and that the 1971 resolution of the county board merely assigned to him the carrying out of business of the county board; and that he was acting as a committee of one, relying on MCLA 46.30(1)(c); MSA 5.353(1)(c).

Some rather general principles relate to county government and the powers of county boards of

commissioners. In the first place, with few limited exceptions, the Constitution of the State of Michigan vests all governmental power in the tripartite executive, legislative and judicial divisions of government. Local governments have no general or inherent powers. *Mason County Civic Research Council v Mason County,* 343 Mich 313; 72 NW2d 292 (1955). Their limited powers rather, are only those expressly conferred upon them by the Constitution of the State of Michigan, by acts of the Legislature, or necessarily implied therefrom. *Alan v Wayne County,* 388 Mich 210; 200 NW2d 628 (1972).

The limited powers that a county board of commissioners does have are legislative and administrative, but are not executive in the sense of the executive department in the tripartite division of state government. Neither the board collectively, nor the chairman thereof, are chief executives of the county. The few powers the board does have are to be exercised as a board and not individually. *Saginaw County v Kent,* 209 Mich 160; 176 NW 601 (1920). And the powers of the board are exercised through its official resolutions and proceedings, recorded in its official minutes.[1]

Chapter 46 of the Michigan Compiled Laws generally sets out the organization and the powers of the board of commissioners. Apart from some specific duties relating to maintenance and repair of buildings and bridges, borrowing procedures, jails and the like, the powers of the board are set forth in § 11 (MCLA 46.11; MSA 5.331), commencing

---

[1] MCLA 46.4; MSA 5.324. *People v Talbot,* 196 Mich 520; 162 NW 1017 (1917); *Giddings v Wells,* 99 Mich 221; 58 NW 64 (1894).

As a corollary, its meetings being public (MCLA 46.30; MSA 5.353) and its official actions being a matter of public record, the public has a means of knowing the manner and the extent to which its elected board has exercised its trust. *Collins v Detroit,* 195 Mich 330; 161 NW 905 (1917).

"the said several boards (of commissioners) shall have power and they are hereby authorized *at any meeting thereof lawfully held:"* and which section includes, "Sixteenth, To represent their respective counties and to have the care and management of the property and business of the county in all cases where no other provisions shall be made".

Section 30 (MCLA 46.30; MSA 5.353) notes the duties of the chairman as simply being the person to preside over the meetings, to have power to administer oaths to persons submitting matters to the board, to issue subpoenas for witnesses and to perform the ceremonial function of affixing his signature on behalf of the county to certain documents.

Having thus created a body with limited, narrow powers designed to be exercised collectively and publicly, the Legislature and common law have added certain other restrictions to prevent conflict of interest. Thus, the common law developed the doctrine of incompatibility to preclude one person from holding two public offices the duties of which could be incompatible and give rise to possible conflicts of governmental, as distinguished from personal or private, interests.

A second safeguard, legislatively created, goes beyond the common law incompatibility doctrine, and is found in MCLA 46.30; MSA 5.353, which prohibits the county board of commissioners from appointing or electing one of its members to *any* other county office or position, whether compatible with the office of commissioner or not.[2]

In *Hanna v Chalker,* 136 Mich 8; 98 NW 732 (1904), a third kind of situation existed, which

---

[2] "No (commissioner) while he is a member of such board shall be eligible to election or appointment to any other county office or position, the election or appointment of which is within the jurisdiction of such board of (commissioners).

involved neither incompatibility of office nor appointment by the board of one of its members to another county office or position, but rather the employment by the board of one of its members in ordinary county employment, transcribing records in the office of the Register of Deeds. The Court concluded that this was not unlawful at common law, however it might be viewed ethically. Thereafter, the Legislature concluded to make such employment unlawful, by enacting MCLA 46.30a; MSA 5.353(1), quoted above.[3]

Defendant notes, quite correctly, that it is not uncommon or improper for a county board of commissioners, or a committee thereof, to ask an individual member or members to perform certain tasks such as investigating and reporting upon particular programs or situations; that such individual conduct on the part of the commissioners is not only impliedly necessary for the functioning of county boards, but is expressly sanctioned and compensation authorized therefor by the provisions of MCLA 46.30(1)(c); MSA 5.353(1)(c) which reads as follows:

*"A member of the board shall receive compensation as established for attendance at board meetings when he is serving as a member of a committee of the board when the board is not in session or when he is acting in an individual capacity as a supervisor or as a chairman of a committee in carrying out the business of the board*

---

[3] *Hanna v Chalker,* thus, would clearly be decided differently today as a result of the legislative enactment of MCLA 46.30a; MSA 5.353(1).

Defendant's brief cites the opinion of the Attorney General of January 24, 1939, postdating MCLA 46.30a; MSA 5.353(1) (1937 PA 199), to the effect that notwithstanding the act, the board could appoint one of its members to another position. The opinion is not on point, however, since it does not deal with county government or the application of MCLA 46.30a; MSA 5.353(1); but rather deals with the question of construing a city charter as to whether a city council could appoint a mayor from its own membership.

*when authorized by the board. A* member of a committee shall *not* be entitled to payment under the provisions of this subdivision where the services performed were not ordered by the board or the chairman of the board or for more than 60 days in 1 year as a member of the committee, except that in counties now or hereafter having a population of more than 350,000 and not more than 1,500,000, members serving on a committee shall be entitled to payment of not exceeding a total of 120 days for a committee, but not to exceed a total of 200 days for all committee work in a calendar year, as provided under the provisions of this subdivision, when ordered to serve by the board or chairman of the board. Nothing herein contained shall be construed so as to in any way repeal other acts providing for compensation to members of boards engaged in committee work or change in number of days allowed therein for regular or special sessions in any one year, and the act shall stand the same as if this act had not been passed. *The chairman of the board as an ex officio member of the several committees of the board and for the performance of any extra duties assigned to him by the board in connection with attendance at meetings of the several committees of the board, or other assignments, the limitation of number of days for which he may receive compensation shall not apply.* " (Emphasis added.)

The first section clearly sanctions some activity by an individual member of the board or a committee chairman and authorizes his compensation therefor when he is (a) carrying out the business of the board, and (b) authorized by the board to do so.

The last sentence of the section, noting that the chairman of the board is an ex-officio member of several committees, provides that the limitation of days of compensation, applicable to all other members of the board, is not applicable to the chairman when he is performing extra duties assigned to him by the board for committee work or other assignments.

The Court must reject defendant's contention

that these sections permit the county board of commissioners to "assign" a commission member to do *any* work related to county matters. The citation of 67 CJS, Officers, § 23, p 133, to the effect that a legislative body may extend the power and duties of its own members is of dubious application to a county board of commissioners vested with only those powers expressly granted by the Legislature. To so construe MCLA 46.30(1)(c); MSA 5.353(1)(c), would render MCLA 46.30a; MSA 5.353(1), meaningless and disregard the intent of the Legislature. The earlier legislation, MCLA 46.30(1)(c); MSA 5.353(1)(c), must be construed in the light of the legislative intent manifested by the later legislation.

The question, then, in applying MCLA 46.30a; MSA 5.353(1), is one of determining what matters involve the lawful compensation of an individual commissioner who is carrying out legitimate business of the board under authority of the board, and what matters instead fall within the prohibited appointments or employment proscribed by MCLA 46.30a; MSA 5.353(1).

What is the business of the county board of commissioners? Apart from its legislative powers and specific administrative powers and duties imposed upon it by the Legislature, it has only such administrative powers as are necessary to accomplish its own organizational housekeeping and to enable it to attend to the details of performing its other duties. An example used by defendant's counsel in arguing clearly illustrates the distinction to be made. Noting that the board's Building and Grounds Committee must meet regularly to insure that the maintenance and repairs of county buildings and grounds are attended to and custodial work performed, it was argued that the com-

mittee members might personally perform such work and be compensated therefor. The argument fails to distinguish between county business and the business (or responsibility) of the county board of commissioners. It is the business of the county to have public buildings maintained and repaired. It is the business of the county board of commissioners to see that the necessary work is done. It is not the duty of the board, or of any individual member thereof, to do the work personally. The abstract work done in *Hanna v Chalker, supra,* was county business and the employee-commissioner could be compensated prior to the enactment of MCLA 46.30a; MSA 5.353(1), just as any work done by a county employee was compensable; but he was compensated as an employee and not as a commissioner performing work of the board of commissioners under MCLA 46.30(1)(c); MSA 5.353(1)(c).

Statutes such as MCLA 46.30(1)(c); MSA 5.353(1)(c), are designed to protect the public by keeping the business of government untainted by the business of self-interest.

An examination of the duties of the defendant, noted above, discloses that they were not mandated by act of the Legislature nor by the Federal legislation or implementing regulations of the Emergency Employment Programs. If a county participated in the EEA programs, these were things that had to be done to implement and comply with the Federal acts and regulations, and it would be the duty of the board of commissioners to insure that they were done. But the day-to-day work involved in performing those duties was not the personal responsibility of the board of commissioners. The function of a "co-ordinator" or "liaison officer" was not the function of the board. This

implementation of the program, while county business, is not the business of the board of commissioners and the defendant's day-to-day performance of the duties described above was ordinary employment and within the express prohibition of MCLA 46.30a; MSA 5.353(1).

The proceedings in the district court did not involve a determination of whether any of the compensation received by the defendant was for an original investigation and progress reports to the board of commissioners for which compensation under MCLA 46.30(1)(c); MSA 5.353(1)(c), would be appropriate. The lower court is, therefore, sustained. The matter is remanded to the district court for a determination as to whether or not any of the compensation received by defendant was for an original investigation and subsequent reports to the board.

The circuit court is hereby affirmed; a public question being involved no costs will be taxed.